```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-27-14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                              13 Misc. 373 (PKC)

HAWKER BEECHCRAFT, INC., et al                                      Chapter 11 Case No.
                                                                    12-11873 (SMB)
------------------------------------------------------------x
UNITED STATE OF AMERICA EX REL. DONALD                             Chapter 11 Adversary
MINGE AND DAVID KIEHL AND DONALD                                   Proceeding No. 12-01890
MINGE AND DAVID KIEHL INDIVIDUALLY,                                (SMB)


                              Plaintiffs,

                   -against-                                        MEMORANDUM
                                                                    AND ORDER
HAWKER BEECHCRAFT CORPORATION,

                              Defendant.
------------------------------------------------------------x

CASTEL, District Judge:

         This interlocutory bankruptcy appeal turns in substantial part on the statutory

construction of a provision of the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 ("BAPCPA"). 11 U.S.C. § 1141(d)(6)(A). The principal issue presented is whether the

claims of certain plaintiffs in a qui tam action brought under the False Claims Act ("FCA") may

be excepted from discharge under the provision of BAPCPA. Id. There is a confirmed plan of

reorganization for debtor-defendant Hawker Beechcraft Corporation ("HBC") in this Chapter 11

proceeding, and the bankruptcy court held as a matter of law that the FCA claims for damages

did not qualify for exception from discharge under section 1141(d)(6)(A). For reasons to be

explained, this Court does not agree and remands for consideration of the exception based on the

facts presented.

         Plaintiffs Donald Minge and David Kiehl are relators in a qui tam action brought

against the debtor under the FCA. The provision at issue states in relevant part that "the

confirmation of a plan does not discharge a debtor that is a corporation from any debt—(A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under" specified statutes, including the FCA. Id. Plaintiffs argue that under section 1141(d)(6)(A), the debtor's potential liability in the qui tam action is excepted from discharge.

   The bankruptcy court held otherwise, concluding that section 1141(d)(6)(A) incorporated procedural requirements set forth in 11 U.S.C. § 523(c)(1) and corresponding Bankruptcy Rule 4007(c), which require a creditor seeking to except its claim from discharge to commence an adversary proceeding prior to a set deadline. Because plaintiffs failed to commence their adversary proceeding prior to that deadline, the bankruptcy court held that they were time-barred from availing themselves of the discharge exception.

   This Court concludes that the reference in the statute to debt "of a kind specified in paragraph 2(A) or 2(B) of section 523(a)" is merely an incorporation of the description of a type of debt set forth in those sections. Here, only paragraph 2(A) is relevant and it describes a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." The plaintiffs' claims in the False Claims Act case may be such a debt because they plainly allege fraud by the debtor and associated entities in government contracting. Thus, the FCA claims might not be discharged by reason of the confirmation of HBC's plan of reorganization.

   This Court holds that the bankruptcy court erred when it held that the reference in section 1141(d)(6) to section 523(a)(2)(A) and (B) was more than the incorporation of a definition and incorporated procedural requirements under section 523(c)(1). The bankruptcy court further erred by holding that section 523(c)(1) applies to all debtors in a Chapter 11 case,

2

rather than only to individual debtors as the text of section 523 indicates.  Accordingly, this

Court reverses and vacates so much of the bankruptcy court's ruling as held that section

523(c)(1) and corresponding Bankruptcy Rule 4007(c) apply to an adversary proceeding seeking

a discharge exception under 11 U.S.C. § 1141(d)(6)(A).


I.  BACKGROUND

A. The FCA Action & Adversary Proceeding

The material facts relevant to this appeal are not in dispute.  Plaintiffs Donald

Minge and David Kiehl are former employees of TECT Aerospace, Inc. or TECT Aerospace

Wellington, Inc. (together, "TECT"), manufacturers of aerospace components and subcontractors

of defendant HBC.  HBC is the reorganized debtor in the underlying Chapter 11 case and a

manufacturer of military aircraft.  On July 27, 2007, plaintiffs filed a qui tam suit under the FCA

against, inter alia, HBC and TECT in the District Court of Kansas (the "Kansas Action"). [1]

Minge v. TECT Corp., No. 07-1212-MLB (D. Kan.).  There, plaintiffs alleged that defendants

made misrepresentations in their certifications to the government regarding certain components

manufactured by TECT and incorporated into military aircraft sold to the government.  Pursuant

to the remedial provisions of the FCA, plaintiffs sought to recover triple the damages sustained

by the government (totaling approximately $2.3 billion), a civil penalty of $11,000 for each of

the 347 violations alleged (totaling approximately $3.8 million), and attorneys' fees and costs.

On May 3, 2012, HBC and certain affiliates filed a petition for relief under

Chapter 11 of the Bankruptcy Code, staying the Kansas Action as to HBC.  See Minge v. TECT

Corp., No. 07-1212-MLB, Dkt. No. 354 (D. Kan. May 14, 2012).  The bankruptcy court

---

[1] Qui tam is a shortened form of the Latin phrase qui tam pro domino rege quam pro se ipso in hac parte sequitur, which means "who pursues this action on our Lord the King's behalf as well as his own."  See Vermont Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 768 n. 1 (2000).

appointed Epiq Bankruptcy Solutions, Inc. ("Epiq") as "claims agent" at the debtors' request,

pursuant to 28 U.S.C. § 156(c).  On June 5, 2012, Epiq mailed a "Notice of Chapter 11

Bankruptcy Cases, Meeting of Creditors, & Deadlines," dated June 5, 2012 (the "Notice"), to

creditors and other parties in interest.  (Dkt. No. 27-2)  The Notice was a completed version of

Official Form 9F, a duly promulgated model form intended for use in Chapter 11 cases in which

the debtor is a corporation or partnership.  The Notice stated that the creditors' meeting required

under 11 U.S.C. § 341 would take place on June 26, 2012.  In language unaltered from Official

Form 9F, a section on the second page of the Notice entitled "Discharge of Debts" provided

information regarding the discharge of debts upon confirmation of a Chapter 11 plan.  This

section notified recipients that in order to avoid the discharge of a debt pursuant to 11 U.S.C.

§ 1141(d)(6)(A), they were required to file a complaint with the bankruptcy clerk by a deadline

specified under the heading "Deadline to File a Complaint to Determine Dischargeability of

Certain Debts" on the first page of the Notice.  That section of the Notice did not provide a date,

but instead stated that "Notice of deadline will be sent at a later time."

　　　　Plaintiffs commenced an adversary proceeding on September 27, 2012, seeking a

dischargeability determination with respect to their FCA claims against HBC in the Kansas

Action.  Their complaint alleged that the FCA claims in the Kansas Action were exempt from

discharge under 11 U.S.C. § 1141(d)(6)(A).  Specifically, plaintiffs sought a determination of

nondischargeability based on each of the two grounds set forth in section 1141(d)(6)(A), alleging

that their debt was both "of a kind specified in section 523(a)(2)(A) owed to a domestic

governmental unit" and "debt owed to plaintiffs as a result of the action they had filed under

Subchapter III of chapter 37 of title 31 of the United States Code."  (Compl., Adv. Proc. 12-1890

(SMB), Dkt. No. 1, at ¶ 39 (Bankr. S.D.N.Y. Sep. 27, 2012))  HBC moved to dismiss plaintiffs'

adversary proceeding on several grounds, asserting that the complaint was time-barred under

4

Bankruptcy Rule 4007(c), that plaintiffs lacked standing to assert the nondischargeability of their

qui tam claims on behalf of the government, that the complaint failed to plead fraud with the

required element of heightened scienter, and that plaintiffs had not asserted any claims

constituting "debts owed to a person" within the meaning of 11 U.S.C. § 1141(d)(6)(A).  493

B.R. at 700.


       B.  Proceedings in the Bankruptcy Court

       1.  Overview

On August 2, 2013, the bankruptcy court issued a memorandum decision

dismissing plaintiffs' adversary complaint as to their qui tam claims for damages and penalties

under the FCA. In re Hawker Beechcraft, Inc., 493 B.R. 696 (Bankr. S.D.N.Y. 2013).  Because

HBC's plan of reorganization was confirmed in February 2013, the decision had the effect of

confirming the discharge of these claims. Id. at 713.  The bankruptcy court, however, did not

rule on "whether or to what extent the Plaintiffs have personal claims against" HBC, and thus

permitted plaintiffs' adversary proceeding to survive with respect to potential claims for

attorneys' fees and expenses arising from the FCA action; the bankruptcy court viewed these

claims as potentially recoverable under 31 U.S.C. §§ 3730(d)(3) and (4).  Id. at 712-13.

The bankruptcy court's analysis focused on the interpretation of 11 U.S.C.

§ 1141(d)(6), a provision enacted as part of BAPCPA.  This provision added limited exemptions

to the otherwise generally comprehensive discharge provided for debtors under 11 U.S.C. §

1141(d)(1).  Section 1141(d)(6) provides:

> Notwithstanding paragraph (1), the confirmation of a plan does not discharge a
> debtor that is a corporation from any debt—
>
> (A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that

> is owed to a domestic governmental unit, or owed to a person as the result
> of an action filed under subchapter III of chapter 37 of title 31 or any
> similar State statute . . . .

11 U.S.C. § 1141(d)(6)(A). The bankruptcy court parsed subparagraph (A) into two independent

clauses separated by the comma following "domestic governmental unit." 493 B.R. at 710.

Under this reading, the first clause ("Clause 1") excepts from discharge any debt "of a kind

specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental

unit," and the second clause ("Clause 2") excepts any debt "owed to a person as the result of an

action filed under subchapter III of chapter 37 of title 31 or any similar State statute[.]"[2] Because

Minge and Kiehl pursued their *qui tam* claims as relators on behalf of the United States but also

stood to recover a portion of any damages awarded in a successful claim, they argued that their

claims were exempt under both clauses of section 1141(d)(6)(A).

As Judge Bernstein explained, under the Bankruptcy Code there are generally

"two types of exceptions to discharge: (1) those that are self-executing and (2) those that require

the creditor to seek a determination of dischargeability in the bankruptcy court by a fixed

deadline, failing which the exception does not apply and the debt is discharged." 493 B.R. at

701 (citing 11 U.S.C. § 523(c)(1)). The difference between the two categories is the allocation

of the burden of persuasion regarding the dischargeability of a certain debt. If an exception is

self-executing, a creditor or debtor may seek a determination of dischargeability at any time

---

[2] Section 523(a)(2) provides in relevant part that an individual debtor is not discharged from any debt
  (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained
  by--
  (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or
  an insider's financial condition; [or]
  (B) use of a statement in writing-- (i) that is materially false; (ii) respecting the debtor's or an insider's
  financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property,
  services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to
  deceive . . . ."

Subchapter III of chapter 37 of title 31 governs claims against the United States Government, and includes, inter
alia, claims brought under the FCA.

pursuant to Fed. R. Bankr. P. 4007(b), and absent a determination that the debt is dischargeable "the creditor may take steps to collect the debt from non-estate property" upon termination of the automatic stay. Id. at 701-02.

In contrast, exceptions in the non-self-executing category require a creditor to affirmatively seek a determination of exception to the discharge before a specified deadline. Id. at 702. If a creditor fails to seek that determination before the deadline and prevail in the proceeding, the debtor is discharged from the claimed debt upon confirmation of a plan. By operation of 11 U.S.C. § 523(c)(1), the non-self-executing category of discharge exceptions includes three exceptions applicable to an individual debtor's discharge, which are set forth in 11 U.S.C. § 523(a). Section 523(c)(1) provides:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

Thus, in order to qualify a claim for the discharge exception provided in section 523(a)(2), (4), or (6), a creditor in the bankruptcy case of an individual debtor is required to seek a determination of discharge in bankruptcy court by filing a complaint to commence an adversary proceeding. The applicable deadline is set forth in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. European American Bank v. Benedict (In re Benedict), 90 F.3d 50, 53 (2d Cir. 1996). Rule 4007(c), which sets forth the procedures applicable to a determination of the dischargeability of a debt, requires creditors to file such a complaint "no later than 60 days after the first date set for the meeting of creditors under [11 U.S.C.] § 341(a)," unless the court extends the deadline for cause. Fed. R. Bankr. P. 4007(c). The Rule further provides that the bankruptcy court "shall give all creditors no less than 30 days' notice of the time so fixed . . . ."

Id.

### 2.   The Bankruptcy Court's Holding

Addressing a question of first impression, the bankruptcy court held that the procedural requirements of 11 U.S.C. § 523(c)(1) applied to the exception to discharge in Clause 1, meaning that this exception is not self-executing. 493 B.R. at 705. Having thus found Bankruptcy Rule 4007(c) applicable to plaintiffs' claims under Clause 1, the court went on to conclude that plaintiffs had failed to comply with the deadline set forth in that Rule. Id. at 708. In the court's view, plaintiffs had "actual notice" of the deadline to file an adversary complaint, because Rule 4007(c) expressly sets the deadline 60 days after the first creditors' meeting, and the court-approved Notice sent to all creditors included the date of this meeting. Id. Although the Notice stated that notice of the deadline to seek a determination of dischargeability would be sent to creditors "at a later time," the court found this irrelevant, stating that the Notice "did not include any incorrect information," and that "[t]he information it did include allowed the Plaintiffs to compute the deadline for filing the adversary proceeding." Id.

Addressing plaintiffs' claims under Clause 2, the court held that Clauses 1 and 2 of 11 U.S.C. § 1141(d)(6)(A) were independent of one another, and that section 523(c)(1) did not apply to Clause 2. Id. at 710. In other words, the court found the exception set forth in Clause 2 to be a self-executing exception to discharge, such that any determination of discharge sought under Clause 2 would not be time-barred for failure to comply with Bankruptcy Rule 4007(c). However, the court further held that plaintiffs' qui tam claims for damages and penalties did not qualify for the Clause 2 discharge exception because these claims are owed to the government and are therefore not "debts owed to a person" within the meaning of the FCA. [3] Id. at 712. At

---

[3] Under the Bankruptcy Code, governmental units are expressly excluded from the definition of a "person." 11 U.S.C. § 101(41).

the same time, the court also held that the payment of reasonable attorneys' fees, costs, and expenses to which a successful <u>qui tam</u> plaintiff is entitled under 11 U.S.C. §§ 3730(d)(1) and (2) are "debts owed to a person" within the meaning of Clause 2. <u>Id.</u> at 712.

The bankruptcy court's decision resulted in the discharge of plaintiffs' <u>qui tam</u> claims against HBC insofar as they sought damages and penalties. <u>Id.</u> at 713. The court declined to dismiss plaintiffs' complaint "to the extent that it alleges that a claim for attorneys' fees and expenses is non-dischargeable." <u>Id.</u> at 712-13. Plaintiffs timely moved for leave to file an interlocutory appeal. This Court granted plaintiffs leave to so appeal on December 18, 2013. <u>In re Hawker Beechcraft, Inc.</u>, 13 Misc. 373 (PKC), 2013 WL 6673607 (Dec. 18, 2013).

## II. STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees, and "from interlocutory orders and decrees [] of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157]." 28 U.S.C. § 158(a). A bankruptcy court's legal conclusions are reviewed <u>de novo</u>, while its findings of fact are reviewed for clear error. <u>Solow v. Kalikow (In re Kalikow)</u>, 602 F.3d 82, 91 (2d Cir. 2010).

## III. DISCUSSION

"As in any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." <u>Sebelius v. Cloer</u>, 133 S. Ct. 1886, 1893 (2013) (citation and quotations omitted). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." <u>United States v. Kozeny</u>, 541 F.3d 166, 171 (2d Cir. 2008)

9

(citation and quotations omitted). "Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." Id. at 171. "Statutory enactments should, moreover, be read so as to give effect, if possible, to every clause and word of a statute." In re Barnet, 737 F.3d 238, 246-47 (2d Cir. 2013) (citation and internal quotation marks omitted).

### A. The Clauses of 11 U.S.C. § 1141(d)(6)(A) Are Independent.

Because the bankruptcy court's holding turned in part on section 1141(d)(6)(A)'s opening phrase, "of a kind specified in paragraph (2)(A) or (2)(B) of subsection 523(a)," this Court considers whether this limiting phrase modifies all of section 1141(d)(6)(A) or only an initial independent clause. As interpreted by the bankruptcy court, section 1141(d)(6)(A) consists of two separate and independent clauses. Clause 1 excepts from discharge any debt "of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit." 11 U.S.C. § 1141(d)(6)(A). Separately, Clause 2 excepts any debt "owed to a person as the result of an action filed under," inter alia, the FCA. Id.

Based on the plain text of the statute and pertinent legislative history, this Court adopts the bankruptcy court's conclusion that Clause 1 and Clause 2 of 11 U.S.C. § 1141(d)(6)(A) are independent. But because this Court concludes that section 523(c)(1) and corresponding Bankruptcy Rule 4007(c) do not apply to creditors seeking a discharge under any portion of section 1141(d)(6)(A), the interpretation is not dispositive.

First, subdivision (A) consists of two subordinate clauses separated by a comma and joined by the coordinating conjunction "or." 493 B.R. at 710 (quoting H. Ramsey Fowler & Jane E. Aaron, The Little Brown Handbook 455 (9th Ed. 2004); Bryan A. Garner, The Elements of Legal Style 19 (Oxford University Press 1991)). "[T]he meaning of a statute will typically heed the commands of its punctuation." United States Nat'l Bank of Oregon v. Independent Ins.

Agents of America, Inc., 508 U.S. 439, 454 (1993); see also Scalia and Garner, Reading Law, §
23 ("Punctuation in a legal text will rarely change the meaning of a word, but it will often
determine whether a modifying phrase or clause applies to all that preceded it or only to a part.").
The position of the comma in this provision is most naturally read to limit the application of the
limiting phrase "of a kind specified in [section 523(a)(2)(A) and (B)]" to debts that are owed to a
domestic governmental entity.

Second, as HBC itself noted in its briefing to the bankruptcy court, Congress's
parallel use of the phrases "owed to" in "owed to a domestic governmental unit" and "owed to a
person," rather than using "owed to a domestic governmental unit or person," means that "the
only reasonable reading . . . is to create two separate clauses . . . ." 493 B.R. at 710 (citing HBC
Br., Adv. Proc. 12-1890, Dkt. No.10, at 13-14 (Bankr. S.D.N.Y. Nov. 21, 2012)). The
bankruptcy court further noted that a passage of the House of Representatives report for
BAPCPA directly supports this reading. Id. (citing H.R. Rep. No. 109-31 at 102 (2005)).[4]
Accordingly, 11 U.S.C. 1141(d)(6)(A) is properly analyzed as providing two separate and
independent discharge exceptions, and the limiting phrase "of a kind specified in paragraph
(2)(A) or (2)(B) of section 523(a)" modifies only any debt "that is owed to a domestic
governmental unit," and does not modify any debt "owed to a person as a result of an action filed
under subchapter III of chapter 37 of title 31 or any similar state statute."

---

[4] The relevant passage of the House Report provides:

> Section 708 amends section 1141(d) of the Bankruptcy Code to except from discharge in a corporate
> chapter 11 case a debt specified in subsections 523(a)(2)(A) or (B) of the Bankruptcy Code owed to a
> domestic governmental unit. In addition, it excepts from discharge a debt owed to a person as the result of
> an action filed under subchapter III of chapter 37 of title 31 of the United States Code or any similar state
> statute.

H.R. Rep. No. 109-31 at 102 (2005) (emphasis added).

B. **The Procedural Requirements of 11 U.S.C. § 523(c) Do Not Apply to a Creditor Seeking a Discharge Under 11 U.S.C. § 1141(d)(6)(A).**

In concluding that the procedural requirements of 11 U.S.C. § 523(c)(1) and Bankruptcy Rule 4007(c) apply to a creditor seeking to except its claim from the discharge of a corporate debtor, the bankruptcy court primarily relied on two alternate lines of reasoning.  First, the bankruptcy court concluded that Congress's use of the phrase "debt [] of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a)" in effect implicitly incorporated section 523(c)(1).  Second, reading section 523(c)(1) as a stand-alone provision independent of section 523(a), the bankruptcy court concluded that section 523(c)(1)'s use of the phrase "the debtor" rather than "an individual debtor" meant that that section applied to all Chapter 11 debtors, including corporate debtors.  Neither rationale supports the application of the requirements of section 523(c)(1) to a proceeding to determine the dischargeability of a debt in the bankruptcy case of a corporate debtor.

1. **The Language of Section 1141(d)(6)(A) Does Not Incorporate Section 523(c)(1) by Reference.**

The plain language of section 1141(d)(6) neither sets forth nor incorporates by reference any procedural requirement for its exceptions to discharge to take effect.  Section 1141(d)(6) simply provides that "the confirmation of a plan does not discharge a debtor that is a corporation from any debt" that falls under the two categories enumerated in Clause 1 and Clause 2.  Nothing in the language of 11 U.S.C. § 1141(d)(6) indicates that Congress sought to import the procedural requirements of 11 U.S.C. § 523(c)(1) to apply to a debtor that is a corporation.  On its face, therefore, section 1141(d)(6) is self-executing.

The bankruptcy court concluded otherwise.  Because the Clause 1 exception applies to debts "of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a)," and section 523(c)(1) refers to debts "of a kind specified in paragraph (2) . . . of [section 523(a)]," the court

12

found that, read together, the two statutory provisions compelled the application of the latter to the former. 493 B.R. at 704. In other words, even though section 1141(d)(6)(A) did not reference section 523(c)(1), Congress's use of the phrase "of a kind specified in [section 523(a)(2)(A) and (B)]" alone triggered the application of section 523(c)(1), incorporating it by implied reference. Id. at 703 ("[T]he omission of a reference to § 523(c)(1) does not mean that it does not apply.").

    While it is true that both Clause 1 and section 523(c)(1) refer to debts of a kind included in section 523(a)(2)(A) and (B), as further discussed below the reference in section 523(c)(1) must be construed in connection with the leading language in section 523(a), which limits the applicability of section 523 to individual debtors. Similarly, by its terms section 1141(d)(6) applies only to "a debtor that is a corporation." 11 U.S.C. § 1141(d)(6). By providing an exception to the discharge of debts "of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit," Congress incorporated by reference two definitional provisions from section 523(a)—and nothing more.

    The noun "kind" means "a group of people or things that belong together or have some shared quality: a particular type or variety of person or thing." Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/kind. In turn, sections 523(a)(2)(A) and (B) are descriptive provisions, setting forth two particularized types of debts. 11 U.S.C. § 523(a)(2)(A), (B). It is indisputable that section 1141(d)(6)(A) does not expressly incorporate section 523(c)(1). Further, there is nothing in the plain language of section 1141(d)(6)(A) or the definitional portions of section 523(a) that are expressly incorporated to support the implied incorporation of section 523(c)(1).

    Three additional considerations support this interpretation. First, the interpretation is consistent with prior caselaw. Second, it is logical when considered together

with section 1141(d)(2), another subsection of discharge exception provision at issue here. Third, it is supported by a Chapter 12 case relied upon by the bankruptcy court.

With respect to previous caselaw, prior to the bankruptcy court's decision no court had ever held that section 523(c)(1) applied to a corporate debtor. To the contrary, several courts within the Second Circuit and elsewhere have observed that section 523 as a whole applies only to individual debtors, and not to corporate debtors. See In re MF Global Holdings, Ltd., No. 11-15059 (MG), 2012 WL 734175 (S.D.N.Y. Mar. 6, 2012), at *3 ("In the Second Circuit, it is well-settled that section 523 does not apply to corporate debtors."); Adam Glass Serv., Inc. v. Federated Dep't Stores, Inc., 173 B.R. 840, 842 (E.D.N.Y. 1994) ("§ 523 only applies to individual debtors.") (citing In re Spring Valley Farms Inc., 863 F.2d 832, 834 (11th Cir. 1989)); In re Automatic Plating of Bridgeport, Inc., 202 B.R. 540, 542 (Bankr. D. Conn. 1996) ("In this circuit, it is well settled that § 523 does not apply to corporate debtors."); In re Trafalgar Associates, 53 B.R. 693, 696 (Bankr. S.D.N.Y. 1985) ("[S]ection [523] on its face applies only to individual debtors, and not to limited partnerships . . . ."); see also In re Pac.-Atl. Trading Co., 64 F.3d 1292, 1302 (9th Cir. 1995) ("§ 523 only applies to individual and not corporate debtors.") (citing Yamaha Motor Corp. v. Shadco., Inc., 762 F.2d 668, 670 (8th Cir. 1985)). Although most of these decisions predated the enactment of section 1141(d)(6) and none specifically discussed section 523(c)(1), it is notable that from the enactment of section 523 in 1978 to the decision of the bankruptcy court, no court had held that section 523 applies to non-individual debtors.

An examination of subsection 1141(d)(2) is also instructive. This subsection provides, "A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title." 11 U.S.C. § 1141(d)(2). Here, in a subsection applicable only to individual debtors, the statutory text references section 523 as

14

a whole and thus arguably incorporates that section wholesale. In contrast, section 1141(d)(6)

expressly applies only to corporations, and its subsection (A) incorporates nothing more than two

definitional subparagraphs of section 523(a). "[W]hen the legislature uses certain language in

one part of the statute and different language in another, the court assumes different meanings

were intended." Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004) (citing 2A N. Singer,

Statutes and Statutory Construction § 46:06, p. 194 (6th rev. ed. 2000)).

   The conclusion that section 1141(d)(6)(A) incorporated no more than the two

definitional provisions it references is further supported by New Venture P'ship v. JRB Consol.,

Inc. (In re JRB Consol., Inc.), 188 B.R. 373, 374 (Bankr. W.D. Tex. 1995), a Chapter 12 case

relied on by the bankruptcy court. See 493 B.R. at 704. Section 1228(a)(2) of the Bankruptcy

Code sets forth an exception to the discharge of a Chapter 12 debtor in language similar to the

phrase in Clause 1. 11 U.S.C. § 1228(a)(2). The section excepts from discharge any debt "of the

kind specified in section 523(a) of [the Bankruptcy Code]." Id. In New Venture, the bankruptcy

court held that this reference to section 523(a) incorporated only those subparagraphs of 523(a)

that "identify types of debts which are eligible to be excepted from discharge," and did not

incorporate the balance of section 523(a). 188 B.R. at 374. While this decision predated

BAPCPA, the court's conclusion that section 1228(a)(2) incorporated only the portions of

section 523(a) that it expressly named supports the conclusion that section 1141(d)(6)(A) did not

implicitly incorporate section 523(c)(1).

   2. By Its Own Terms, Section 523 Only Applies to Individual Debtors.

   In addition to reasoning that section 1141(d)(6)(A) incorporated section 523(c)(1)

by an implied reference, the bankruptcy court also reached its holding as to Clause 1 by

reasoning that in contrast with the list of exceptions set forth in 11 U.S.C. § 523(a), which

expressly applies only to individual debtors, 11 U.S.C. § 523(c)(1) applies to "debtors." 493

B.R. at 704. Reading section 523(c)(1) independently, without reference to section 523(a), the bankruptcy court concluded that because the provisions of Chapter 5 of the Bankruptcy Code, including section 523, are generally applicable in all Chapter 11 cases under 11 U.S.C. § 103(a), the lack of the word "individual" in section 523(c)(1) indicates that the provision applies to all Chapter 11 debtors.

 The Bankruptcy Code defines a "debtor" as a "person or municipality concerning which a case under this title has been commenced." 11 U.S.C. § 101(13). "The term 'person' includes individual, partnership, and corporation . . . ." 11 U.S.C. § 101(41). In general, the provisions of Chapters 1, 3, and 5 of the Bankruptcy Code apply in all cases filed under Chapter 11. 11 U.S.C. § 103(a). Notwithstanding this general rule, throughout the Bankruptcy Code certain provisions by their own terms expressly apply only to debtors that are individuals. See, e.g., 11 U.S.C. §§ 522(b), 523(a), 524(d). Less frequently, the Code also includes provisions that apply only to debtors that are corporations. See, e.g., 11 U.S.C. §§ 362(a)(8), 541(f), 1141(d)(6).

 The assertion that "by its terms, § 523(c)(1) applies to 'debtors' and not just individual debtors," 493 B.R. at 704, is not supported by the statutory language of section 523. Section 523(c)(1) refers to "the debtor" and not "debtors," which in context has a different meaning. It provides:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1) (emphasis added). "The" is "used as a function word to indicate that the following noun or noun equivalent is definite or has been previously specified by context or by

circumstance." Webster's New Collegiate Dictionary 1199 (1981). "It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.' " Am. Bus Ass'n v. Slater, 231 F.3d 1, 4-5 (D.C. Cir. 2000) (citations and internal quotation marks omitted). "The statute's use of the definite article 'the,' as opposed to the indefinite 'a,' 'an,' or 'any,' indicates that Congress intended the term modified to have a singular referent." S.E.C. v. KPMG LLP, 412 F.Supp. 2d 349, 387-88 (S.D.N.Y. 2006). See also Nat'l Foods, Inc. v. Rubin, 936 F.2d 656, 660 (2d Cir. 1991) ("Absent some reason to conclude otherwise, and we see none, 'the court' referred to the second time in subparagraph (b) should be the same one referred to the first time [in subsection (a)]—'a court of competent jurisdiction' . . . ."); Margan v. Niles, 250 F. Supp. 2d 63, 70 (N.D.N.Y. 2003) (where Congress seeks to limit the scope of a statute, it uses a definite article, such as "the"); Freytag v. C.I.R., 501 U.S. 868, 901-02 (1991) (Scalia, J., concurring) (use of definite article in the phrase "the Courts of Law" in the Appointments Clause narrows the class of eligible courts of laws to those referenced under Article III of the Constitution); Noel Canning v. N.L.R.B., 705 F.3d 490, 500 (D.C. Cir. 2013) cert. granted, 133 S. Ct. 2861 (2013) (use of a definite article in the Recess Clause of Article II, section 2 indicates reference to a specific Congressional recess, rather than to any generic recess).

The most natural place to search for the identity of the referent in the phrase "the debtor" in 11 U.S.C. § 523(c)(1) is at the beginning of the same statutory section—particularly because this subsection refers back to subsection (a) three times. Subsection (a), in turn, refers to "an individual debtor." 11 U.S.C. § 523(a). Thus, giving effect to Congress's use of the word "the" rather than "a" or "any" compels the conclusion that "the debtor" in section 523(c)(1) refers to "an individual debtor" identified in section 523(a).

This interpretation is consistent with other provisions of the Bankruptcy Code.

For instance, section 522 sets forth a detailed list of property that a debtor may exempt from property of the estate. 11 U.S.C. § 522. Subsection 522(b)(1) makes clear that only "an individual debtor" may avail itself of these exemptions. The following subsection, 522(c), states that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . ." Because only an individual debtor may exempt property under section 522, the reference to "the debtor" in subsection (c) can only logically be read to refer to "an individual debtor" identified in subsection (b)(1). If subsection (c) were read without reference to the preceding subsection, any debtor would be able to avoid liability on the property listed as exempt in section 522 despite the limitation in section 522(b)(1). See also 11 U.S.C. § 109(g) (subsection (g) refers to "a debtor in a case pending under this title at any time in the preceding 180 days," and paragraphs (1) and (2) reference "the debtor" in connection with a previously filed bankruptcy case); 11 U.S.C. § 302 (subsection (a) provides that a joint cause may be filed by "an individual that may be a debtor and such individual's spouse; subsection (b) refers to "the debtors"). While certain sections of the Bankruptcy Code do refer to "the debtor" without internally identifying a referent, see, e.g., 11 U.S.C. §§ 343, 349(a), 350(b), these provisions are distinguishable from sections including 522 and 523 that limit their application by identifying a specific type of debtor and subsequently referring to "the debtor."

The mere fact that Chapter 5 of the Bankruptcy Code as a whole applies in a Chapter 11 case does not alter the analysis, because "when two statutes cover the same situation, the more specific statute takes precedence over the more general one." Cook v. New York State Division of Parole, 321 F.3d 274, 279 n.4 (2d Cir. 2003). Thus, even though section 523 and all the provisions of Chapter 5 are generally applicable in all Chapter 11 bankruptcy cases through 11 U.S.C. § 103(a), the more specific language of section 523 itself limits its applicability to

cases in which the petition for relief was filed by an individual debtor.

               3.   Cases Applying Procedural Requirements in Chapter 12 and 13
                      Bankruptcy Proceedings are Inapposite.

 In reaching its conclusion, the bankruptcy court relied on several decisions arising

out of bankruptcy cases brought under Chapters 12 and 13 of the Bankruptcy Code in which

bankruptcy courts applied the procedural requirements of section 523(c)(1) to creditors. The

bankruptcy court reasoned that "to the extent the applicability of § 523(c)(1) . . . is ambiguous,

any ambiguity is resolved when the provisions are read in pari materia with the other discharge

provisions and exceptions, including § 1328(a)(2) and the corporate Chapter 12 discharge

exceptions." 493 B.R. at 705 (citing Cohen v. De la Cruz, 523 U.S. 213, 219-20 (interpreting the

phrase "debt for" in section 523(a)(2)(A) in connection with its use in other subsections of

section 523(a)); New Lamp Chimney Co. v. Ansonia Brass and Copper Co., 91 U.S. 656, 662-63

(1875) (reading certain provisions of the Bankruptcy Act of 1867 in pari materia); Buchwald v.

Williams Energy Mktg. & Trading Co. (In re Magnesium Corp. of Am.), 460 B.R. 360, 367

(Bankr. S.D.N.Y. 2011) ("Statutory provisions (including, and perhaps especially, those in the

Bankruptcy Code) must be construed in pari materia, and one statutory provision in the

Bankruptcy Code cannot be considered without reference to other relevant provisions of the

same statute, and its subject and policy.")).

 In the context of statutory construction, in pari materia is an interpretive principle

holding that "adjacent statutory subsections that refer to the same subject matter should be read

harmoniously." United States v. Broncheau, 645 F.3d 676, 685 (4th Cir. 2011) (citation and

internal quotations omitted). The difficulty in applying this interpretive canon is in "determining

when different statutes should be regarded as addressing the same topic . . . ." Firstar Bank, N.A.

v. Faul, 253 F.3d 982, 990 (7th Cir. 2001); see also United States v. Freeman, 44 U.S. 556, 556

n.1 (1845) ("Statutes are in pari materia which relate to the same person or thing, or the same class of persons or things. The word par must not be confounded with the term similis. It . . . is intimating not likeness, but identity."); Scalia and Garner, Reading Law, § 39 ("The critical questions are these: Just how affiliated must "affiliated" be, and what purposes are the same?"). Because corporate debtors under Chapter 12 are a far more narrowly circumscribed class than corporate debtors under Chapter 11, and because Chapter 13 deals solely with individual debtors, the discharge provisions of each chapter, read in context, are too attenuated on the points at issue here to be read in pari materia with one another.

      First, each of the Chapter 13 cases is inapposite, because Chapter 13, entitled "Adjustment of Debts of an Individual with Regular Income," applies only to individuals. 11 U.S.C. § 109(e) ("Only an individual . . . may be a debtor under chapter 13 of this title.") Accordingly, not only section 523(c)(1) but all of section 523 indisputably applies to Chapter 13 debtors, because all Chapter 13 debtors are individual debtors.

      The bankruptcy court also relied on two Chapter 12 cases that applied certain limited parts of section 523(a)—but not section 523(c)(1)—in the bankruptcy case of a corporate debtor. Southwest Georgia Farm Credit, Aca v. Breezy Ridge Farms, Inc. (In re Breezy Ridge Farms, Inc.), Adv. Pro. No. 09–1011–JDW, 2009 WL 1514671, at *3 (Bankr. M.D. Ga. May 29, 2009); New Venture, 188 B.R. at 374. "Only a family farmer or family fisherman with regular annual income may be a debtor under chapter 12 of this title." 11 U.S.C. § 109(f). "Family farmer" and "family fisherman" are defined terms in the Bankruptcy Code. 11 U.S.C. § 101(18),(19A). Both a family farmer and a family fisherman may be a corporation, subject to two limitations: first, more than 50 percent of outstanding stock or equity must be held by a single family and its relatives, who must also conduct the operations of the farm or fishery; and second, the corporation's aggregate debts must not exceed a ceiling of $4,031,575 in the case of

20

a family farmer or $1,868,200 in the case of a family fisherman.[5]  Id.

　　Neither of the two Chapter 12 cases relied upon by the bankruptcy court supports the application of section 523(c)(1) to a dischargeability determination under section 1141(d)(6). Interpreting the Chapter 12 discharge provision, 11 U.S.C. § 1228, the bankruptcy court in New Venture took a narrow view of that provision's incorporation of section 523(a).  Section 1228(a) excepts from discharge "any debt . . . of the kind specified in section 523(a) of [the Bankruptcy Code]."  11 U.S.C. § 1228(a)(2).  The court in New Venture held that this reference "easily seems to be limited to the subparagraphs of § 523(a) which identify the types of debts which are eligible to be excepted from discharge," and "does not incorporate the limiting definition found in the introductory paragraph of § 523(a)."  188 B.R. at 374.  Though the bankruptcy court did not address section 523(c), it follows from its conclusion that the reference to section 523(a) in section 1228 did not fully incorporate section 523(a) itself that the other subsections of section 523 were likewise not incorporated.  The New Venture court further observed that "[i]t seems clear from [the language in 1141(d)(2) and (3)] that corporate debtors in Chapter 11 are not subject to a complaint to determine dischargeability of debt under § 523(a)."  Id. at 374.

　　The court in Breezy Ridge Farms reached a similar conclusion in discussing 11 U.S.C. § 1141(d), stating only that "Congress has applied parts of § 523(a) to corporate debtors, even though such debtors are excluded from § 523(a) by its terms."  2009 WL 1514671, at *2. The "parts" referred to were specifically identified by the bankruptcy court as the definitional subsections of 523(a)(2)(A) and (B).  Id.

　　Further, the provisions of Chapter 12 and corresponding case law offer no guidance on issues distinguishing between individual and corporate debtors.  The Chapter 11 discharge provision, 11 U.S.C. § 1141, repeatedly distinguishes between individual debtors and

---

[5] These dollar amounts are periodically updated based on the Consumer Price Index.  See 11 U.S.C. § 104(a).

corporate debtors such that certain discharge exceptions apply only to one type of debtor.  See 11

U.S.C. § 1141(d)(2), (5), (6).  In contrast, the Chapter 12 discharge provision, 11 U.S.C. § 1228,

draws no such distinctions.  See New Venture, 188 B.R. at 374 (stating that section 1228(a) "is

broader [than section 523(a)] in that its language is inclusive of all debtors—individuals,

partnerships, and corporations.").  The text of Chapter 12 is bereft of any reference to individual

or corporate debtors, consistently referring only to "a debtor" or "the debtor."  See 11 U.S.C. §

1201 et seq.  The lack of such distinction within Chapter 12 considered in conjunction with the

narrowly circumscribed type of corporation that may be a Chapter 12 debtor renders analogy

between the two discharge provisions unpersuasive.  While the bankruptcy court stated that

"there is no basis to distinguish between the scope of the discharge in the individual and

corporate chapter 12 cases," 493 B.R. at 705, and that may be so, to draw such a distinction in a

Chapter 11 case between corporate debtors and all other debtors was the precise effect of

Congress's enaction of section 1141(d)(6).  The section created a new discharge exception

applicable only to corporate debtors, making it more difficult for a corporate debtor to discharge

certain fraud-related debts.

> ### 4.  Neither Official Form 9F Nor Policy Considerations Compel a Different Result.

In arguing for the application of the 60-day deadline in section 523(c)(1) to

relators in this case, HBC contends that Official Form 9F supports its interpretation.  Although

the Official Forms, like the Federal Rules of Bankruptcy Procedure, hold a presumption of

validity, this presumption falls away where the relevant Official Form is inconsistent with a

statutory directive.  In re Osei, 389 B.R. 339, 353-54 (Bankr. S.D.N.Y. 2008).  An Official Form

cannot trump the statutory directives of the Bankruptcy Code.  Id.  HBC's argument based on

their understanding of bankruptcy practice is similarly unavailing.  The fact that some qui tam

relators have filed their complaints with the understanding that Fed. R. Bankr. P. 4007(c) may apply to dischargeability determinations under section 1141(d)(6)(A) is not relevant to whether the deadline actually applies as a legal requirement.

In reaching its conclusion, the bankruptcy court cited two policy considerations raised by a commentator to support the application of the section 523(c)(1) 60-day deadline to claims under Clause 1.  493 B.R. at 705 n.5 (citing Ralph Brubaker, Taking Exception to the New Corporate Discharge Exceptions, 13 Am. Bankr. Inst. L. Rev. 757, 770 n.68 (Winter 2005) ("Brubaker")).  First, the bankruptcy court noted that a discharge exception favoring a governmental creditor effectively grants such creditors priority over other non-governmental creditors, thus punishing innocent creditors for the bad acts of the corporation.  Id. (citing Brubaker at 766-68).  Second, the failure to apply the 60-day deadline adds uncertainty to restructuring efforts.  Id. (citing Brubaker at 770).  These policy arguments may be sound. Undoubtedly, allowing a creditor to "assert a significant non-dischargeable claim" late in the reorganization process, even after a plan has been confirmed, could "lend uncertainty to any restructuring efforts."  Id.[6]  But the statute is as it is written.

In light of the foregoing, the bankruptcy court erred in holding that the procedural requirements of 11 U.S.C. § 523(c)(1) apply to a complaint to determine the dischargeability of a debt under 11 U.S.C. § 1141(d)(6)(A).  Because this holding renders relators' adversary proceeding complaint timely filed, it is unnecessary to reach the issue of the adequacy of the notice provided to relators.

---

[6] In the cited article the commentator identified the procedural issue that has arisen in this case and concluded that section 523(c)(1) applied only to individual debtors and that "section 1141(d)(6) does not seem to be within the scope of section 523(c)(1)."  Brubaker at 770 n.68.

C. Relators Have Standing To Bring The Adversary Complaint.

        In its briefing to the bankruptcy court, HBC argued that relators lacked standing to assert nondischargeability under Clause 1 of section 1141(d)(6)(A), because the relators are not a "domestic governmental unit." The bankruptcy court declined to reach this issue because its conclusion that relators' were time-barred from asserting claims under Clause 1 rendered the question moot. 493 B.R. at 702 n.4.

        Nevertheless, HBC's objection is answered by the Supreme Court's reasoning in Vermont Agency of Natural Resources v. U.S. ex rel. Stevens, 529 U.S. 765 (2000). There, the Supreme Court found that qui tam relators have standing to prosecute FCA claims, even though the injury complained of in such suits is an injury to the United States government. 529 U.S. at 774. To demonstrate that a relator was more than a mere "statutorily designated agent of the United States," the Court catalogued the rights of a relator in an FCA suit. Id. at 772-73. Relators have the right to continue as a party even when the Government intervenes and assumes primary responsibility for prosecuting the action. Id. at 772 (citing 31 U.S.C. § 3730(c)(1)). They also have a right to a hearing before the government voluntarily dismisses a suit. Id. (citing 31 U.S.C. § 3730(c)(2)(A)). Further, the government may not settle an FCA suit over a relator's objection without a judicial determination of fairness, adequacy, and reasonableness. Id. (citing 31 U.S.C. § 3730(c)(2)(B)).

        Based on these considerations, the Supreme Court concluded that qui tam relators have "an interest in the lawsuit, and not merely the right to retain a fee out of the recovery." Stevens at 772 (emphasis in original). The Court further concluded that "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim," id. at 773 n.4 (emphasis in original), and that this "assignment" provided relators with standing to assert the injury in fact suffered by the government. Id. at 773-74.

In short, qui tam relators have Article III standing to assert FCA claims in a federal court even though those claims assert the government's injury in fact. Federal Rule of Bankruptcy Procedure 4007(a) provides that "[a] debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt." Fed. R. Bankr. P. 4007(a) (emphasis added). The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). In turn, a "claim" is defined as, inter alia, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Relators are creditors with claims against the debtor that arose years before the confirmation of HBC's Chapter 11 plan of reorganization. Accordingly, there is no basis in law to preclude relators from asserting a non-dischargeability complaint as to their FCA claims based on injuries to the government covered under Clause 1 of section 1141(d)(6)(A).

Neither of the cases relied upon by HBC before the bankruptcy court compels a different conclusion. See U.S. ex rel. Kolbeck v. Point Blank Solutions, Inc., 444 B.R. 336, 340 (E.D. Va. 2011) (qui tam relators cannot assert the police power exception to the automatic stay under 11 U.S.C. § 362(b)(4) because an FCA action in which the government has declined to intervene is not "an action or proceeding by a governmental unit"); U.S. ex rel. Fullington v. Parkway Hosp., Inc., 351 B.R. 280, 290 (E.D.N.Y. 2006) (same). While it is true that relators themselves are not a domestic governmental unit and thus cannot invoke certain statutory privileges reserved to such governmental units, including the "police power" exception to the automatic stay under 11 U.S.C. § 362(b)(4), Stevens leaves no doubt that qui tam relators do have standing to assert FCA claims in the federal courts based on the government's injury. In light of the Supreme Court's reasoning in Stevens and the absence of any authority to the

contrary, this Court concludes that relators have standing to assert their nondischargeability complaint under both clauses of section 1141(d)(6)(A).

      D.  <u>Whether Relators' Claims Are "Debts Owed to a Person" Under 1141(d)(6)(A)<br>     Need Not Be Decided.</u>

In addition to seeking to invoke the discharge exception under Clause 1, relators also sought to except their FCA claims from discharge under Clause 2 as "debts owed to a person as a result of an action filed under [the FCA] . . . .". <u>See</u> 11 U.S.C. § 1141(d)(6)(A). Reviewing the FCA's language, the bankruptcy court found that any penalties and damages awarded thereunder were paid in full directly to the United States and not to any relators. 493 B.R. at 710-11. The court further found that, subsequent to a liable defendant's payment to the government, the relators are paid a "bounty" from that payment. <u>Id.</u> Accordingly, the bankruptcy court held that relators' claims were owed to the government and were thus not "debts owed to a person" within the meaning of 11 U.S.C. § 1141(d)(6)(A). <u>Id.</u> at 712. The bankruptcy court also held that, in contrast to claims for damages and penalties, relators' potential claims for attorneys' fees and expenses under the FCA were owed directly to relators and thus were "debts owed to a person." <u>Id.</u> at 712-13.

Because this Court holds that relators' claims for damages and penalties may be dischargeable under Clause 1 of section 1141(d)(6)(A), it is unnecessary to determine whether these claims are "debts owed to a person" under Clause 2 of the same section. With respect to the bankruptcy court's holding that potential claims for attorneys' fees and expenses are "debts owed to a person," no party takes issue with this holding. Accordingly, this Court does not reach issues raised under Clause 2 of section 1141(d)(6)(A).

CONCLUSION

For the foregoing reasons, the July 24, 2013 order of the bankruptcy court is REVERSED in part.  The adversary proceeding is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
March 27, 2014

27